

**Signed November 09, 2017.**

_____
**Ronald B. King**
**Chief United States Bankruptcy Judge**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| OMNI LION'S RUN, L.P. AND | § | LEAD CASE NO. 17-60329-RBK |
| OMNI LOOKOUT RIDGE, L.P., | § | SECOND CASE NO. 17-60447-RBK |
| | § | |
| DEBTORS. | § | CHAPTER 11, |
| | § | JOINTLY ADMINISTERED |

## OPINION

Before the Court are two Motions for Relief from the Automatic Stay (the "Motions") filed by LB-UBS 2007-C2 Lookout Ridge Boulevard, LLC (the Lender for Omni Lookout Ridge, L.P.) and COMM 2015-CCRE22 East Central Texas Expressway, LLC (the Lender for Omni Lion's Run, L.P.) (collectively, the "Lenders"). The Lenders ask the Court to lift the stay on the only meaningful asset in each bankruptcy estate: two apartment complexes in Harker Heights, Texas. This Court finds that there is no compelling cause to lift the stay and that both properties are necessary to an effective reorganization of the Debtors. Accordingly, both Motions will be denied.

## BACKGROUND

Omni Lion's Run, L.P. and Omni Lookout Ridge, L.P. (collectively, the "Debtors") filed chapter 11 petitions on May 2, 2017, and June 6, 2017, respectively. Both businesses are designated single asset real estate as defined in 11 U.S.C. § 101(51B). Omni Lion's Run, L.P. owns an apartment complex (the "Lion's Property") on one piece of property; Omni Lookout Ridge, L.P. owns an apartment complex (the "Lookout Property") on an adjacent piece of property. Mr. Gregory Hall is the limited partner in the Debtors and is the sole member of the general partner, Omni GP, LLC. He is also the guarantor on the secured notes to the Lenders. Because the Debtors are affiliated entities, are jointly owned, share a common loan special servicer, have a history of joint management, and own adjacent apartment complexes that are associated with each other, their bankruptcies became jointly administered on September 12, 2017. The Lenders are also related and their interests were represented by the same counsel at trial; the arguments to lift the stay are largely the same for both properties and the Court will deal with both Motions from the Lenders in this Opinion.

In January of 2016, a fire destroyed Building Four of the Lookout Property; twenty-four units became uninhabitable and the insurance company paid out the proceeds. Omni Lookout Ridge, L.P. hired Belfor USA Group, Inc. ("Belfor") to repair and rebuild Building Four. The Lender for the Lookout Property did not consent to the use of the insurance proceeds and held the proceeds—totaling just over $1,000,000—despite the fact that Belfor completed its work. Belfor filed a state court lawsuit, which is currently pending in Bell County. Belfor has filed a mechanic's lien affidavit; a foreclosure by the Lender would wipe out Belfor's lien. Mr. Hall desires to pay Belfor through the plan and release the insurance proceeds to the Lender; Belfor believes that the plan will pay it more quickly than the state court lawsuit, and therefore supports the reorganization.

2

The Lookout Property has filed for chapter 11 protection once before, in September of 2016, a few months after the fire.[1] The court in the first bankruptcy was presented with no plan, no disclosure statement, no appropriate management, no capital supplied by the guarantor, and a situation where rent proceeds were being used to pay Mr. Hall's personal mortgage payments; the court consequently lifted the stay. This Court would have done the same under those circumstances, but reaches the opposite result today because conditions have changed.

With respect to the current bankruptcy cases, when the secured note for the Lion's Property was determined to be in default, its Lender accelerated the note, obtained a receiver in state court, and posted for foreclosure. The Lookout Property's note was also accelerated and its Lender posted for foreclosure. The bankruptcy cases were filed shortly before the foreclosures were to occur. The receiver presently manages the Lion's Property, but Omni Lookout Ridge, L.P. operates the Lookout Property as a debtor in possession. The Lookout Property is currently being managed by Mr. Brian Blaylock, who replaced a less successful property manager at the behest of Mr. Hall.

The Court heard extensive argument over the Motions, both of which were filed in June of 2017. Trial began as to the Lion's Property on June 27, 2017, but did not conclude; the Lenders moved for and were granted a continuance to August 2, 2017. Another continuance was granted when the Lenders submitted an agreed motion to continue the setting twenty more days. Trial resumed as to both properties on August 22, 2017, and again did not conclude. The scheduled September hearing was then reset for October. The hearings on the Motions recommenced and finally concluded on October 17, 2017. The Court took the Motions under advisement.

---

[1] Bankruptcy Case 16-11048-tmd.

3

The Court finds that it has jurisdiction to render a final order in this core proceeding pursuant to 28 U.S.C. §§ 157(b) and 1334. Venue is proper under 28 U.S.C. §§ 1408 and 1409. This Opinion constitutes the findings of fact and conclusions of law of the Court pursuant to FED. R. BANKR. P. 7052 and FED. R. BANKR. P. 9014.

## DISCUSSION

The Lenders request relief under two provisions of the Bankruptcy Code: 11 U.S.C. §§ 362(d)(1) and 362(d)(2). Section 362(d)(1) instructs courts to grant relief from the automatic stay where there exists cause to do so. The section explicitly includes lack of adequate protection as a ground for relief from stay, but "cause" is not otherwise defined in the Code. Therefore, determining whether cause exists involves case-by-case scrutiny. *In re Reitnauer*, 152 F.3d 341, 343 n.4 (5th Cir. 1998); *In re Sentry Park, Ltd.*, 87 B.R. 427, 430 (Bankr. W.D. Tex. 1988); *see also* H.R. Rep. No. 95-595, at 343 (1977), *as reprinted in* 1978 U.S.C.C.A.N. 5963, 6300 (clarifying that cause for relief may include lack of connection to the bankruptcy case or permitting an action to proceed to completion in another tribunal). Section 362(d)(2) requires a court to lift the stay if the debtor has no equity in the property and the property is not necessary to an effective reorganization.

The party requesting the relief must show a *prima facie* case before the debtor is required to put on its own evidence. *In re Kowalsky*, 235 B.R. 590, 594 (Bankr. E.D. Tex. 1999); *see also In re Keene Corp.*, 171 B.R. 180, 182 (Bankr. S.D.N.Y. 1994) (finding that, where a movant fails to make a *prima facie* case, the court should deny the relief without requiring any showing from the debtor). Beyond the *prima facie* case, which is required in all stay litigation, the movant only bears the burden of proof with respect to the debtor's equity in the property; the party opposed to the relief has the burden on all other issues. 11 U.S.C. § 362(g); *In re Kowalsky*, 235 B.R. at 594.

The two sections under which the Lenders seek relief are disjunctive; therefore, the Court takes its examination of each provision in turn.

### Section 362(d)(1)

The Lenders advance three arguments to lift the stay for cause. First, that the Debtors filed their bankruptcies in bad faith; second, that the Lenders are not adequately protected; and third, that lifting the stay would avoid needless legal fees and expenses.

1. **Bad Faith**

The automatic stay is a pillar of bankruptcy, providing temporary relief from creditors so that debtors may reorganize their finances and have time to determine how best to pay their creditors. ***GATX Aircraft Corp. v. M/V Courtney Leigh***, 768 F.2d 711, 716 (5th Cir. 1985). In order to receive the benefit of the automatic stay, however, debtors must file their bankruptcy cases in good faith; a bad-faith filing is a recognized cause for relief. ***In re Sentry Park***, 87 B.R. at 430. A court's assessment of bad faith allegations relies on a "conglomerate of factors rather than on any single datum." ***In re Little Creek Dev. Co.***, 779 F.2d 1068, 1072 (5th Cir. 1986). These factors include but are not limited to the financial condition of the debtor, motives and disclosures of the debtor, and financial realities of the case. ***In re Shead***, 2008 WL 1995373, at *2 (S.D. Tex. May 6, 2008); ***In re Trust***, 526 B.R. 668, 681 (Bankr. N.D. Tex. 2015).

The Court finds no evidence of bad-faith filing in these cases. It does not appear that the Debtors are trying to take advantage of the automatic stay and needlessly prolong hopeless proceedings; indeed, the Debtors have at each hearing demonstrated the progress made in their plans to pay the Lenders. Mr. Hall has put capital into the properties, Mr. Blaylock is increasing the value of the Lookout Property, the receiver is increasing the occupancy of the Lion's Property, a disclosure statement has been approved, and a plan confirmation hearing is set for December of

2017. Filing for bankruptcy just prior to foreclosure is a factor when assessing bad faith, but is not dispositive. While these are single asset real estate cases, these are not cases where the Debtors seek to delay bankruptcy proceedings or have come to a standstill with the Lenders in state court. This is not merely a two-party dispute. *Cf.* ***In re Anderson Oaks (Phase I) Ltd. P'ship***, 77 B.R. 108, 112 (Bankr. W.D. Tex. 1987). These are not cases where the Debtors lack a source of income to effect the reorganization or make adequate protection payments. There is no compelling evidence that the Debtors are acting in an obstructive manner. The financial realities of the cases do not indicate that the Debtors are attempting to take unfair advantage of the breathing room the automatic stay provides, but rather are pouring money into the properties and preparing plans.

There is hope for rehabilitation; this is not terminal euphoria. The *Little Creek* indicia of bad faith are not present in these cases. The Court finds that the Debtors filed in good faith and have continued to conduct the cases appropriately post-petition.

### 2. Adequate Protection

Secured creditors are entitled to adequate protection of their security interests against the depreciation of collateral prior to the confirmation of a plan. ***In re Baytown Nav., Inc.***, 2012 WL 1123047, at *2 (S.D. Tex. Apr. 3, 2012). To show a *prima facie* case for lifting the stay due to lack of adequate protection, the movant must demonstrate that the value of the collateral is declining or threatens to decline due to the existence of the stay. ***In re JCP Props., Ltd.***, 540 B.R. 596, 613 (Bankr. S.D. Tex. 2015); *see also* ***In re Baytown Nav.***, 2012 WL 1123047, at *3 (stating that if the movant does not demonstrate decline or threat of decline quantitatively or qualitatively, the court will dismiss the motion for relief). After the *prima facie* showing, the respondent must demonstrate that the collateral is not declining in value or that the secured creditor is adequately protected. ***In re Kowalsky***, 235 B.R. at 595.

6

Considering the past mismanagement of the properties, it is understandable that the Lenders were concerned that the value of their collateral might decline. The evidence shows, however, that while the stay has been in place the Debtors have increased the value of the properties to the best of their ability. The Lookout Property is particularly demonstrative, as Omni Lookout Ridge, L.P. is still able to directly manage it. Mr. Blaylock has done an exemplary job improving the property by making it safer, more attractive, and better occupied. His actions have established the Debtors' ability to maintain or improve the value of the collateral, now that appropriate and competent management is in place.

Additionally, the Lenders now receive substantial adequate protection payments, in excess of $20,000 a month for each property. It appears uncontested that the payments are occurring; in fact, keeping the adequate protection payments current on the Lookout Property is a condition of Omni Lookout Ridge, L.P.'s use of cash collateral for actual expenses. Accordingly, the Court finds that the properties are not depreciating and adequate protection exists; the stay may be left in place without unduly harming the Lenders.

### 3. Fees and Expenses

While the Bankruptcy Code does not define "cause," not every possible detriment to the creditor or estate independently justifies lifting the stay. Recognized causes generally take into account relevance, significant prejudice, or improper activity within the bankruptcy proceeding. *See, e.g.*, ***In re Fowler***, 259 B.R. 856, 858 (Bankr. E.D. Tex. 2001) (finding that factors commonly considered in determining "cause" included lack of connection to the bankruptcy case, interference with the bankruptcy case, undue prejudice to the bankruptcy estate, and unsecured creditors attempting to recover from non-estate property).

The Lenders raise a concern that if immediate relief is not granted, estate-administration expenses will build. Perhaps this would have been more persuasive if Lenders' counsel had concluded the hearings in July, August, or September, but it does not appear in reality that there exists much actual alarm about the costs associated with extensive proceedings. In any event, the cost of administering legitimate bankruptcy cases, which the Court finds the present matters to be, does not itself constitute cause to lift the stay. Therefore, the stay will not be lifted for cause under § 362(d)(1).

### Section 362(d)(2)

For the Lenders to prevail in their § 362(d)(2) challenges, the Court must find both that the Debtors have no equity in the respective properties and that the properties are not necessary to an effective reorganization. The Lenders' proofs of claim are disputed, but it is unquestioned that there remains substantial debt on the properties. Appraisal testimony that would indicate lack of equity was presented in the June hearing, but the Lookout Property, at least, has increased in value since then due to Mr. Blaylock's management. The Court, however, need not spend an inordinate amount of time on the equity consideration, as lifting the stay under § 362(d)(2) requires a finding of both no equity *and* that the properties are not necessary to an effective reorganization. Even if the Court were to assume no equity, because the Lion's Property and Lookout Property are necessary to the Debtors' reorganizations, the requirements of § 362(d)(2) are not satisfied and the stay will not be lifted.

Whether a property is necessary to effective reorganization is a fact-intensive question. ***In re Fields***, 127 B.R. 150, 154 (Bankr. W.D. Tex. 1991). There is no bright line or hard and fast rule; the particular posture and circumstance surrounding each debtor must be examined. ***Id.*** Showing that collateral is necessary to an effective reorganization requires demonstrating both that

8

the property is needed for a potential reorganization and that the reorganization is reasonably within reach. ***United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs., Ltd.***, 484 U.S. 365, 375–76 (1988). The bankruptcy court in Omni Lookout Ridge, L.P.'s first case correctly characterized the latter inquiry as whether the debtor has a credible story for how reorganization may occur. The plan for reorganization need not be a guaranteed success, but should have reasonable assurances of commercial viability. ***In re Geijsel***, 480 B.R. 238, 256 (Bankr. N.D. Tex. 2012) (citing ***In re Briscoe Enters., Ltd., II***, 994 F.2d 1160, 1166 (5th Cir. 1993)).

Here, it is undisputed that the only possibility of reorganization would involve the properties. The properties are income-producing and are the only meaningful assets in the estates; without them, there is no reorganization. The final remaining question—and the most crucial for the lift-stay determination—is whether there is a reasonable possibility of reorganization on the horizon.

It would be improper for the Court to engage in a full-scale confirmation hearing when considering motions for relief from stay. Instead, the Court employs standard feasibility factors in its determination of a prospect for reorganization, including but not limited to the earning power of the properties, economic conditions, business prospects, a debtor's management ability, and the probability of continued management. ***In re Geijsel***, 480 B.R. at 257; ***In re Fields***, 127 B.R. at 155. These factors are not a checklist of requirements, but rather guidelines that color a debtor's possibility of reorganization positively or negatively. ***Id.***; *see also* ***In re Am. Solar King Corp.***, 90 B.R. 808, 833 (Bankr. W.D. Tex. 1988) (reiterating the above factors but clarifying that there is no set list of factors courts should "check off" against a debtor's plan). The Court may grant relief from the stay upon a finding of little or no legitimate prospect for reorganization. ***In re Oakgrove Vill., Ltd.***, 90 B.R. 246, 249 (Bankr. W.D. Tex. 1988). This Court finds that the Debtors

9

describe a credible story for their plans. The story is that of an eminently qualified property manager, income-producing properties, a guarantor investing capital amidst lift-stay proceedings, an approved disclosure statement, and a proposed plan with a confirmation hearing only a month away.

### 1. Property Management

It would be a disservice not to begin with the most compelling change since the first bankruptcy involving the Lookout Property: the management. Additionally, because the Lookout Property is managed as a debtor-in-possession property, it is most telling regarding the Debtors' potential to operate the collateral post-confirmation.

The previous manager hired by Mr. Hall did not properly care for the apartment complexes. There was extensive testimony from both sides regarding the poor condition of the collateral prior to the appointment of the receiver and prior to Mr. Blaylock's employment; such conditions would cause any lender distress over the value of its collateral. Mr. Hall's personal mortgage was also being paid, entirely inappropriately though possibly without his knowledge, from the rental income of the properties. Mismanagement occurred for some time; Mr. Hall finally made a change by hiring Mr. Blaylock around the time of the bankruptcy petition. While the Motions at hand—and the accompanying possibilities of foreclosure—have been looming over the properties for months, the Debtors' silver lining is that Mr. Blaylock has had a chance to busily prove his ability the whole time.

Mr. Blaylock was brought on in early June of 2017 once Mr. Hall realized how poorly the previous manager was doing; at the first hearing Mr. Blaylock had only been managing the Lookout Property for two to three weeks. By that time he had already begun repairs, opened ten extra units, and leased five. Prior to coming onto the Lookout Property, Mr. Blaylock was a

hospital administrator and CEO for twenty-five years, built several hospitals including Dell Children's Medical Center, managed all operations for pediatrics statewide for Scott & White, and organized financial operational plans for hospitals. When Lenders' counsel questioned whether Mr. Blaylock had ever operated an apartment complex before, Mr. Blaylock responded that he had "never run anything this simple." (ECF No. 69 at 103). The Court agrees that Mr. Blaylock's background makes him "more than strong enough to be able to run an apartment complex after [he ran] multi-million-dollar hospitals." (ECF No. 147 at 10).

Since his instatement in June, Mr. Blaylock has achieved a great deal. After the unfortunate passing of his maintenance man, Mr. Blaylock even performed some of the unit maintenance himself. His property improvements include:

1) repairing boilers to ensure hot water for tenants;
2) hiring a company to clean and re-open the complex's pool;
3) repairing the hot tub heater;
4) buying and setting up pool furniture;
5) installing an emergency telephone for the pool area;
6) replacing covers on the pool drains;
7) pressure-washing sidewalks and all other concrete surfaces;
8) repairing landscape timbers;
9) painting doors;
10) replacing garbage disposals in units;
11) repairing toilets in units;
12) repairing the sprinkler system;
13) hiring a landscaping company to trim the trees and shrubs;
14) establishing a weekly system for landscaping;
15) removing hazardous dead branches;
16) adding plants to make the complex more attractive;
17) repairing exterior nighttime lighting (in excess of sixty fixtures);
18) re-running wiring and lighting for the sport court;
19) adding a timer for the sport court lighting;
20) removing old fencing and taking bids for new fencing; and
21) installing a new basketball goal.

Mr. Blaylock has also made wise financial moves for the property, including:

1) setting up DIP accounts on both complexes;

2) providing Lenders' counsel with access to the DIP accounts;
3) cutting off the personal-mortgage payments from rental income;
4) creating a spreadsheet of each apartment and determining a costs of repairs;
5) increasing occupancy;
6) preparing extensive *pro formas* for the properties;
7) arranging for the repair of Building Five's stairwells so the building will be habitable;
8) assessing the deferred maintenance needs of the complex; and
9) referring tenants seeking one-bedroom units to the Lion's Property.

Building Four, gutted by the fire, has been fully repaired but was uninhabitable at the time of the final hearing; Belfor withheld the certificate of occupancy while in a place of uncertainty regarding its payment. Building Five at the time of the hearing was eighty-three percent uninhabitable due to damaged stairwells. The Lookout Property has approximately 140 units and more than forty of them cannot be rented; despite this setback, Mr. Blaylock has managed to rent seventy-two units and line up potential tenants for many of the remaining available apartments.

Through Mr. Blaylock, the Debtors show that they are capable of properly managing the complexes, supporting the idea of a feasible reorganization.

### 2. Capital Investments

At trial, much was made of the fact that portions of the plans for reorganization are based on Mr. Hall's promises to invest, and that the Court would have to determine whether or not it believed Mr. Hall, particularly in light of his past errors. The tale of debtors making business errors and then finding new ways forward is not novel in chapter 11 bankruptcy. Today's decision is, again, not a full-blown confirmation hearing; the Court need not determine whether the plan is even likely to succeed. But Mr. Hall's decisions to change management and invest his own funds impart some measure of believability to his intent to confirm a feasible plan.

Mr. Hall, despite his prior oversights, has put his money where his mouth is. Mr. Hall is the guarantor on the notes to the Lenders, and has now put more than $250,000 of his money into

the Lookout Property in the face of ongoing motions for relief from stays, before the confirmation hearing. He has a great deal to lose if the reorganization is unsuccessful, and his commitment to investing capital to improve the properties lends credibility to the Debtors' push to reorganize.

In addition to pouring capital into the properties, Mr. Hall has shown a willingness to work with creditors to improve the cash flow of the complexes. Building Four has remained repaired but uninhabited due to the battle over the insurance money; Mr. Hall paid Belfor $30,000 and is working with it to secure the certificate of occupancy while the state court lawsuit awaits resolution. Further, it is not lost on the Court that Belfor and another creditor, Authentic Contracting Solutions, appeared at the hearings to support the Debtors and their reorganization. The creditors' support is largely due to Mr. Hall's commitment to the reorganization and ability to work with the creditors, even while these Motions were being litigated and the state court proceedings were pending. The Court finds that Mr. Hall's actions thus far support his promises to help fund the reorganization.

### 3. The Plan and Disclosure Statement

The final chapter in the credible story of reorganization is that, unlike in the Lookout Property's original bankruptcy case, there is an approved disclosure statement and a plan on file. It is much easier to find that reorganization is a possibility when a plan of reorganization has actually been proposed. The Debtors are also providing monthly operating reports for both complexes and there is an agreed cash collateral order for the Lookout Property. Testimony provided under seal gave the Court additional details regarding ongoing business negotiations that support the prospect of successful reorganization. The Debtors have projections and estimates for future payments, income sources, and occupancy of the complexes. The details of confirmation

will be considered another day, but the aforementioned factors provide weight to the Debtors' argument that successful reorganization is more than a pipe dream.

This Court finds that both the Lookout Property and the Lion's Property are necessary to the Debtors' reorganization and that the reorganization is reasonably in prospect. Therefore, the stay will not be lifted under § 362(d)(2).

## CONCLUSION

It is certainly true that some debtors attempt to abuse chapter 11 bankruptcy by stiff-arming creditors with the automatic stay and then simply "mowing the grass and waiting for market conditions to turn." *In re Humble Place Joint Venture*, 936 F.2d 814, 817 (5th Cir. 1991). But previously mismanaged single asset real estate cases do not automatically demand evisceration of the stay. The Debtors here have been proactive in their cases. The Debtors filed in good faith, have income-producing properties, are improving the collateral, are making adequate protection payments to the Lenders, have an approved disclosure statement, have a plan on file, have an excellent property manager, have a guarantor putting his capital on the line, have business prospects, and have a pattern of working with their creditors. There is no cause to lift the stay at this time, and the properties are necessary to an effective reorganization of the Debtors.

For the foregoing reasons, both Motions for Relief from Stay must be denied. A separate order will be entered.

# # #